STATE OF CONNECTICUT *v.* KEVIN LIVINGSTON
(7783)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued April 4—decision released July 3, 1990

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen Sedensky III,* assistant state's attorney, for the appellee (state).

Norcott, J. The defendant appeals from his judgment of conviction, after a trial by jury, of one count of robbery in the third degree in violation of General Statutes § 53a-136. The jury acquitted the defendant of a second count of robbery in the third degree. On appeal, the defendant claims that the trial court should not have refused to give an instruction on the defense of renunciation and that it should not have admitted into evidence a knife and a holster. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the evening of February 29, 1988, Felix Sanchez and Angel Padden were walking along Crescent Avenue in Bridgeport when they were confronted by the defendant and a companion, Thomas Phillips. The defendant and Phillips asked Sanchez and Padden for money, and, when Sanchez and Padden kept walking without giving a response, the defendant positioned himself in front of them and told them that if they moved he would "blow off" certain parts of their anatomies. While making this demand, the defendant held

in his hand an object that resembled a gun.[1] The defendant again demanded money, but Sanchez responded that he had none.

The defendant and Phillips then forced Sanchez and Padden against a wall, and the defendant proceeded to search Sanchez' pockets and to pull out a $5 bill, which Sanchez promptly snatched back. As Phillips reached for the $5 bill, the defendant told Phillips to stop and to let Sanchez keep the money. Nothing further was taken from Sanchez, and he was not injured during the incident, which lasted approximately twenty to twenty-five minutes.

During Sanchez' ordeal, Phillips had forced Padden against the wall and, at some point, grabbed two gold chains from around Padden's neck. While Phillips was with Padden, the defendant picked up the receiver at a nearby emergency call box, giving the impression that he was calling the police to the scene. Almost immediately thereafter, Officers Miguel Perez and Michael Rynich approached in a police car. Sanchez spotted the police car and, running toward it, waved it down, as did the defendant, who was a few steps behind Sanchez. Sanchez testified that, as he ran toward the police car, he looked back and saw the defendant pass the object he had been holding to Phillips, who tossed it into a nearby bush.

Sanchez reached the police car first, and, after hearing Sanchez' version of the incident, a version that the defendant vehemently denied when questioned by the police, Rynich arrested the defendant and Phillips. During his patdown of Phillips, Rynich observed a gold chain hanging from one of Phillips' pockets and another gold chain on the ground next to Phillips' left foot. Perez observed the chains also. Sanchez told Perez of

[1] Padden testified at trial that the object was shiny and had the shape of a gun, but he could not actually see a gun barrel.

the discarded object in the bushes, and Perez then went to the bushes and found a knife that was shaped like a gun. That knife was later introduced as evidence at the defendant's trial.

The police then handcuffed the defendant and Phillips, placed them in the rear seat of the police car and drove them to the police station for booking. After the defendant and Phillips were taken from the patrol car, Rynich and Perez searched the rear of the vehicle and, in the process, pulled out the rear seat. As a result of this search, Perez noticed a leather belt holster on the floor near where the defendant had been sitting.[2] This holster was also seized and admitted as evidence at the trial.

The defendant's first claim is that the trial court should not have refused to instruct the jury on the defense of renunciation as provided by General Statutes § 53a-10.[3] The defendant originally was charged with two counts of robbery in the first degree in violation of General Statutes § 53a-134 relative to Sanchez and Padden. The jury acquitted the defendant of the lesser included offense of robbery in the third degree relative to Sanchez, but convicted him of the same lesser included offense regarding Padden.

In its request to charge, the state asked that the trial court give an instruction based on accessory responsi-

---

[2] Perez testified that the holster was a popular model, a type of holster that the arresting officers themselves had owned. Perez also testified that he had checked the rear seat prior to his evening tour of duty and that no one had occupied the rear seat of the patrol car prior to the defendant and Phillips.

[3] General Statutes § 53a-10 provides in pertinent part: "DEFENSE. (a) In any prosecution in which the criminal liability of the defendant is based upon the conduct of another person under section 53a-8, it shall be a defense that the defendant terminated his complicity prior to the commission of the offense under circumstances: (1) Wholly depriving it of effectiveness in the commission of the offense, and (2) manifesting a complete and voluntary renunciation of his criminal purpose."

bility as provided by General Statutes § 53a-8.[4] This request obviously was based on the fact that the evidence showed that, although the defendant and Phillips acted together, the defendant had the most direct contact with Sanchez while Phillips had the most direct contact with Padden. After unsuccessfully arguing that an accessory instruction was unnecessary, the defendant requested that the court give an instruction on the defense of renunciation.[5] The state also requested that the court give an instruction on renunciation together

---

[4] General Statutes § 53a-8 provides:"CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[5] The defendant's request to charge on the defense of renunciation states in pertinent part:

"8. There is evidence alleging the presence and participation of a Mr. Phillips in this case. I should also discuss with you a defense which is set forth in Section 53a-10 of our statutes. This section provides:

" '(a) In any prosecution in which the criminal liability of the defendant is based upon the conduct of another person under Section 53a-8, it shall be a defense that the defendant terminated his complicity prior to the commission of the offense under circumstances: (1) Wholly depriving it of effectiveness in the commission of the voluntary renunciation of his criminal purpose.

" '(b) For purposes of this Section, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.'

"If you find beyond a reasonable doubt that the defendant did any of the things specified in the statute with a criminal and common intent, and that he had effectively renounced his criminal purpose, he is not guilty of the crime and your verdict should be not guilty. If you do not find that to be so beyond a reasonable doubt, then he is entitled to acquittal at your hands. *State* v. *Thomas,* 105 Conn. 757, 762, 763 (1927)."

with its instruction on accessory liability.[6] Thereafter, the trial court instructed the jury on accessory liability but refused to instruct on renunciation. The defendant duly excepted to both the court's instruction on accessory liability and its failure to give the renunciation charge.[7]

The question presented to us by the defendant's first claim is whether the trial court is required to give a requested jury instruction where the defendant has failed to comply with the rules of practice but where the state has provided, through its similar request for instruction, that which the defendant has neglected to provide. In framing this issue, we conclude that, notwithstanding his argument to the contrary, the defend-

---

[6] The state's request to charge on renunciation reads as follows:

"I should also discuss with you a defense which is set forth in Section 53a-10 of our statutes. This sections provides:

" '(a) In any prosecution in which the criminal liability of the defendant is based upon the conduct of another person under section 53a-8, it shall be a defense that the defendant terminated his complicity prior to the commission of the offense under circumstances: (1) Wholly depriving it of effectiveness in the commission of the voluntary renunciation of his criminal purpose.

" '(b) For purposes of this section, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.'

"If you find beyond a reasonable doubt that the defendant did any of the things specified in the statute with a criminal and common intent, and that he had not effectively renounced his criminal purpose, he is just as much guilty of the crime as though he had himself committed it and your verdict should be that he is guilty. If you do not find that to be beyond a reasonable doubt, then he is entitled to acquittal at your hands. *State* v. *Thomas* 105 Conn. 757, 762, 763 (1927)."

[7] The court reinstructed the jury, including the instruction on accessory responsibility above, after it granted the defendant's motion for judgment of acquittal on the charges of robbery in the first degree. The defendant again excepted to the court's instruction.

ant did not comply with Practice Book § 854[8] because his request for the instruction on renunciation did not contain " 'a complete statement of the essential facts as would have justified the court in charging in the form requested.' " *State* v. *Hall,* 213 Conn. 579, 593, 569 A.2d 534 (1990), quoting *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925). In his request, the defendant asserted only that "there is evidence alleging the presence and participation of a Mr. Phillips in this case." This assertion is a "mere general statement" such as that condemned by our Supreme Court in *Hall* for noncompliance with our rules of practice. See id., 591–92. The state, citing *Hall,* urges that we go no further and that we conclude that, because the defendant's request to charge did not comply with the rules of practice, the trial court was not required to give the requested instruction.

We cannot dispose of this issue so simply, however. We must first resolve the question of whether the trial court is required to give the requested instruction, if, as the defendant contends, the state has provided the trial court with the necessary evidentiary basis for the requested instruction, notwithstanding the defendant's failure to do so.

We again are reminded that the rather unique twist to this case is that the state unsuccessfully requested

---

[8] Practice Book § 854 provides:

"Sec. 854.——FORM AND CONTENTS OF REQUESTS

"When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply. Requests to charge should not exceed fifteen in number unless, for good cause shown, the court permits the filing of an additional number. If the request is granted, the judicial authority shall apply the proposition of law to the facts of the case.

"A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper."

virtually the same instruction on renunciation as did the defendant. While the defendant, however, gave the trial court no evidentiary basis to support his request to charge, the state did.[9] The defendant contends that the state's evidentiary basis for the requested instruction "filled the gap" in the defendant's inadequate request, and thus the trial court had before it all that was needed to give the instruction as requested by both parties.

For the purpose of our threshold analysis, we assume the unique situation where the state provides the trial court with the evidentiary basis for a requested charge after the defendant has failed to do so. We find that, in such a situation, the trial court is required to give the requested instruction. Here, the defendant attempted to, and the state did in fact, request a charge on the legally recognized defense of renunciation. " '[A] defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' *United States* v. *Alfonso-Perez,* 535 F.2d 1362, 1365 (2d Cir. 1976)." *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986). It is the defendant's responsibility, however, to present a " 'complete statement of the essential facts

---

[9] The state's "evidence supporting [the] request" on renunciation is as follows:

"In the present case there was testimony that the defendant, Kevin Livingston, took $5.00 from Felix after he had brandished what he represented to be a weapon. The jury could believe the defendant and Thomas Phillips were acting together and were both principals or they could decide that Livingston was helping Phillips rob.

"There was testimony that Phillips kept the gold chains while Livingston allowed Felix Sanchez to keep his $5.00 which may indicate a lack of intent to permanently deprive the owner of his property as to the $5.00, but still intend that Phillips keep the gold chains."

as would have justified the court in charging in the form requested' ''; *State* v. *Hall*, supra, 593, quoting *Dwyer* v. *Connecticut Co.*, supra; by compliance with Practice Book § 854. As our Supreme Court stated in *State* v. *Hall*, supra, 592, " 'a trial court [does not have] an independent obligation " 'to instruct, sua sponte, on general principles of law relevant to all issues raised in the evidence.' " ' *State* v. *McIntosh*, [199 Conn. 155, 160, 506 A.2d 104 (1986)], quoting *State* v. *Preyer*, 198 Conn. 190, 198 n.9, 502 A.2d 858 (1985)."[10]

The state, too, maintains certain obligations in a criminal trial. " 'Cases brought on behalf of the [state of Connecticut] should be conducted with a dignity worthy of the client.' " *State* v. *Couture*, 194 Conn. 530, 567, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). It is axiomatic that a prosecutor's role encompasses both that of an advocate and that of an "administrator of justice." 1 American Bar Association, Standard for Criminal Justice (2d Ed. 1986), The Prosecution Function, § 3-1.1 (b). "Although the prosecutor operates within the adversary system, it is fundamental that the prosecutor's obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public. Thus, the prosecutor has sometimes been described as a 'minister of justice' or as occupying a quasi-judicial position." Id., commentary.

Here, the state's attorney duly fulfilled his obligations by joining the defendant's request for a charge

[10] Our Supreme Court has adopted the position that a defendant is entitled to an *unrequested* charge on a particular defense *only* when it is his sole or principal defense. See *State* v. *Preyer*, 198 Conn. 190, 198 n.8, 502 A.2d 104 (1986). In the present case, the defense of renunciation was not the defendant's only defense. At trial, the arresting police officers testified that the defendant told them that a robbery had not in fact occurred and, during closing argument, the defendant's counsel similarly questioned the veracity of the victims' versions of the events.

on renunciation where the evidence strongly suggested that the defense had been raised and by fully complying with the requirements of Practice Book § 854. By virtue of the state's diligence, the trial court had before it all that was necessary to give the requested instruction on renunciation and was not left in a position, as in *Hall,* where it would have had to engage in sua sponte instructional procedure. As to this matter before us, the trial court should have looked toward the state's vigorous, fair and efficient prosecution of the defendant and should have charged the jury on the defense of renunciation.

Our conclusion that the trial court should not have refused to charge on renunciation does not, however, end our analysis. "[A]n error in the charges requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Anderson,* 212 Conn. 31, 38, 561 A.2d 897 (1989). The state argues that even if the trial court should have given the requested instruction, the failure to do so was harmless because its request to charge provided the essential evidentiary basis for the count of robbery relating to Sanchez *only,* and the jury found the defendant not guilty of that charge stemming from the taking of Sanchez' $5 bill. We agree.

It is clear, from our review of the record, that the state provided the trial court with sufficient evidence to charge on the robbery count relative to Sanchez. The state's recitation of evidence supporting the request included the language, "There was testimony that Phillips kept the gold chains while Livingston allowed Felix Sanchez to keep his $5.00 which may indicate a lack of intent to permanently deprive the owner of his property *as to the $5.00,* but still intended Phillips keep the gold chains." (Emphasis added.) This language, which constitutes part of the evidentiary basis in support of

the request for an instruction on "accomplices" and "renunciation," clearly limits the request to the Sanchez robbery. Because the jury acquitted the defendant of the robbery count relative to Sanchez, the trial court's refusal to charge on renunciation is rendered harmless as to this count.[11] The defendant's contention that we should construe the language in the state's request as including reference to the taking of Padden's gold chains simply is without merit. There is absolutely no mention in these facts of the defendant's actions relative to the emergency call box, to his veritable race with Sanchez to the patrol car or to any other evidence that could possibly be construed as a renunciation of the taking of Padden's property. Since the defendant's request for instruction is equally silent on this point, the trial court properly refused to charge the jury on an instruction not supported by any statement of essential facts. See *State* v. *Woodard,* 11 Conn. App. 499, 503, 528 A.2d 404, cert. denied, 205 Conn. 802, 531 A.2d 940 (1987).

## II

The defendant next claims that the trial court should not have admitted into evidence the knife that Perez found in the nearby bushes and the gun holster that the police officers retrieved from the rear seat of the patrol car where the defendant had been sitting. The defendant argues that the introduction of these items was without probative value and was prejudicial. This claim requires little discussion.

Evidence is deemed admissible if it " 'tends to establish the existence of a material fact or to corroborate

---

[11] Notwithstanding that the defendant has not raised this issue in the context of "constitutional instructional error," we find that, on the whole record, the state has satisfied us that the refusal to charge was harmless beyond a reasonable doubt. See *State* v. *Hoeplinger,* 206 Conn. 278, 294–95, 537 A.2d 1010 (1988); *State* v. *Coleman,* 14 Conn. App. 657, 678–79, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).

other direct evidence in the case.' " *State* v. *Fritz,* 204 Conn. 156, 168, 527 A.2d 1157 (1987). "Determinations of relevancy are within the broad discretion of the trial court and will not be overturned in the absence of clear abuse of discretion. Id., 167–68. In making such determinations, a trial court is not required to find as a prerequisite to admissibility that evidence is conclusively linked to other evidence. 'Evidence is not rendered inadmissible simply because it is not conclusive. It is admissible if it tends to support a relevant fact even in a slight degree, so long as it is not prejudicial or merely cumulative. . . . The defendant's objection goes essentially to the weight of the evidence rather than to its admissibility.' *State* v. *Morrill,* 197 Conn. 507, 548–49, 498 A.2d 76 (1985)." *State* v. *Ortiz,* 14 Conn. App. 493, 499, 542 A.2d 734 (1988).

The defendant was initially charged with a violation of General Statutes § 53a-134 (a) (3).[12] One of the essential elements that the state had to prove was that a participant in the robbery used or threatened the use of a dangerous instrument.[13] From the evidence before it, the jury could have reasonably found (1) that at the inception of the robbery, the defendant displayed a shiny object that resembled a gun, (2) the victims saw the defendant pass the object to Phillips, who threw it into some bushes, (3) Perez retrieved the knife from the bushes to which he had been directed by the victims, (4) a small leather holster was found in the area of the patrol car where the defendant had been sitting,

[12] General Statutes § 53a-134 provides in pertinent part: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a)·A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument."

[13] The defendant was originally charged with two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) but was found guilty of only one count of the lesser included offense robbery in the third degree.

(5) the holster had not been in the rear seat prior to the defendant's entry. The trial court correctly ruled, in essence, that it was the *jury's* function to examine this relevant evidence to determine, for example, whether the knife resembled a gun or whether the knife fit the holster. The court correctly ruled that the defendant's objection went to weight and credibility rather than to admissibility.

Finally, we are not persuaded by the defendant's claim that the prejudicial effect of this evidence outweighed its probative value. Once the trial court determined the relevancy of the evidence, it ruled, in its discretion, that the probative value outweighed any prejudicial effect. See *State* v. *Mandrell,* 199 Conn. 146, 152–53, 506 A.2d 100 (1986); *State* v. *Braman,* 191 Conn. 670, 676, 469 A.2d 760 (1983). " ' "Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." ' *State* v. *Falby,* [187 Conn. 6, 23, 444 A.2d 213 (1982)]." *State* v. *Mandrell,* supra, 152; see also *State* v. *Braman,* supra. We find that the defendant has failed to overcome the heavy burden he bears when seeking reversal of the exercise of judicial discretion in this matter. See *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984); *State* v. *Johnson,* 11 Conn. App. 251, 258, 527 A.2d 250 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.