STATE OF CONNECTICUT *v.* OSCAR HARVEY
(AC 22355)

Foti, Dranginis and West, Js.

Argued January 15—officially released June 3, 2003

*David B. Rozwaski*, special public defender, for the appellant (defendant).

*Proloy K. Das*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne F. Mahoney*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS J. The defendant, Oscar Harvey, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree

in violation of General Statutes § 53a-70 (a) (2),[1] one count of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2)[2] and two counts of making a false statement in the second degree in violation of General Statutes § 53a-157b.[3] On appeal, the defendant claims that the court improperly (1) limited his cross-examination of the victim's mother and (2) denied his motion in limine seeking to exclude evidence of his extramarital affair with the victim's mother. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the evening of December 18, 1999, the defendant drove A, the victim's mother, to work at a department store.[4] The defendant had agreed to babysit A's twenty-two month old daughter (victim) at his apartment while A was at work.[5] A testified that she called the defendant twice from work to check on the victim. During their first conversation, the defendant

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[3] General Statutes § 53a-157b provides: "(a) A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.

"(b) False statement in the second degree is a class A misdemeanor."

[4] In accordance with our policy to protect the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom the victims' identity may be revealed. See General Statutes § 54-86e.

[5] The defendant owned a residential building in Hartford. He lived and had an office in one apartment and A previously lived in another apartment.

told A that the victim had removed her overalls and had put her finger in her vagina. In their second conversation, the defendant again told A that the victim had put her "hand up in her vagina." At around midnight, the defendant picked A up from work and dropped her off at his apartment; he did not stay. A testified that while changing the victim's diaper, she discovered blood and lots of baby powder in the dirty diaper. She immediately called the police.

When Officer John McGrath of the Hartford police department arrived, he found A crying hysterically. McGrath testified that he observed a lot of baby powder and a "pinkish tinge" discharge inside the victim's diaper. He further testified that A had told him that the defendant might have sexually assaulted the victim.

The victim was transported by ambulance to the Connecticut Children's Medical Center, where Kenneth Platt, a physician, examined her. Platt testified that he had observed vaginal bleeding and bruising, and a small laceration near the entrance of the victim's vagina. He further testified that the victim's injuries could not have been self-inflicted, but were consistent with a sexual assault by digital penetration.

The jury also heard testimony from a friend of A. She testified that the defendant and A had had a romantic relationship, and that the defendant had told her that he was divorced and that his daughter was dead.

On January 10, 2000, the defendant voluntarily went to the police station for questioning. Prior to being questioned by Detective Steven DiBella and Detective William Long, the defendant signed an acknowledgment form indicating that he had been advised of his *Miranda* rights.[6] Initially, the defendant insisted that he did not

---

[6] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

know A, but he later admitted that she was a former tenant. He also stated that he never had baby-sat the victim. DiBella testified that on further questioning, the defendant confessed that he had been untruthful in his first statement because he did not want his wife to find out about his extramarital affair with A.

In his second written statement, the defendant admitted that he and A had had a sexual affair and that he had baby-sat the victim on the night in question. He also wrote that the victim took her clothes off and started to "play with herself." DiBella then told the defendant that his version of the incident was not credible because the victim wore a buckled overalls outfit.

The defendant then decided to give a third written statement. In that statement, the defendant confessed that he had removed the victim's clothes and diaper, and accidentally penetrated her vagina with his finger to see how it felt. He also wrote that when he finished the sexual assault, he put powder on the victim's genital area and put her diaper back on.

The following day, the defendant returned to the police station to give another statement. In that statement, he stated that A had used his daughter's social security number to get her job at the department store. At trial, the defendant recanted the sworn statements he had made on January 10, 2000, testifying that he did not know A and that he never had baby-sat the victim or touched her.

At the conclusion of the state's case-in-chief, the defendant orally requested a judgment of acquittal, which the court denied. On June 15, 2001, the jury returned a verdict of guilty. On August 21, 2001, the court sentenced the defendant to a total effective term of twenty years incarceration, execution suspended after eighteen years, with ten years probation. This appeal followed.

## I

The defendant argues that the court violated his sixth amendment right of confrontation by impermissibly curtailing his cross-examination of A.[7] Specifically, the defendant argues that the court's decision not to allow him to question A about her prior arrests[8] restricted his right to demonstrate her bias in testifying against him. We decline to review the claim.

The defendant raises his claim for the first time on appeal. Additionally, the record reveals that the defendant failed to request review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 60-5.[9] "It is well established that generally this court will not review claims that were not properly preserved in the trial court. . . . A defendant may prevail on a claim of constitutional error not preserved at trial, however, if the defendant satisfies the four part standard set forth in *State* v. *Golding*, [supra, 239–40]."[10] (Internal quotation

[7] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[8] In his brief to this court, the defendant also based his claim on the fact that he was not allowed to question A about prior deportation proceedings. The defendant did not develop that portion of his claim or provide citations or analysis of case law in support thereof. Claims on appeal that are briefed inadequately are deemed abandoned. See *State* v. *Rivera*, 74 Conn. App. 129, 135 n.6, 810 A.2d 824 (2002).

[9] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[10] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived

marks omitted.) *State* v. *Parham*, 70 Conn. App. 223, 231 n.9, 797 A.2d 599 (2002). "The defendant's failure to address the four prongs of *Golding* amounts to an inadequate briefing of the issue and results in the unpreserved claim being deemed abandoned." (Internal quotation marks omitted.) *State* v. *David P.*, 70 Conn. App. 462, 474, 800 A.2d 541, cert. denied, 262 Conn. 907, 810 A.2d 275 (2002). Finally, because the defendant has neglected to analyze his claim of plain error, he has failed to demonstrate a manifest injustice. See *State* v. *Rogelstad*, 73 Conn. App. 17, 26 n.6, 806 A.2d 1089 (2002). Accordingly, we decline to review his unpreserved claim.

## II

The defendant next claims that the court improperly denied his motion in limine[11] seeking to preclude the state from any inquiry into the sexual relations between himself and A, a much younger woman.[12] The defendant contends that that evidence was irrelevant and highly prejudicial.[13] According to the state, the evidence was

the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[11] At trial, the defendant filed a motion in limine (1) to prohibit inquiry into the defendant's physical abuse of A, (2) to exclude any medical records that did not directly relate to the victim's medical treatment, including the identity of any alleged assailant, and (3) to prohibit inquiry into sexual relations between the defendant and A. The court granted the first two requests. Only the court's ruling with respect to the introduction of evidence regarding the extramarital affair is at issue.

[12] At the time of the incident, the defendant was fifty-two years old and A was twenty-one years old.

[13] The defendant relies on *State* v. *Kindrick*, 30 Conn. App. 56, 57–60, 619 A.2d 1 (1993), to support his claim that the trial court improperly admitted evidence of his extramarital affair with A. We find, to the contrary, that an examination of *Kindrick* demonstrates that it is factually distinguishable from this case. In *Kindrick*, we upheld the trial court's decision to grant the defendant's motion in limine to exclude evidence of prior sexual conduct with the victim. Unlike the defendant in *Kindrick*, the defendant in this case wants to exclude evidence of prior sexual conduct with someone

relevant to the material issue of why A entrusted the defendant with the care of the victim. We agree with the state.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *State* v. *Rogelstad*, supra, 73 Conn. App. 22–23. "Determinations of relevancy are within the broad discretion of the trial court and will not be overturned in the absence of clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Livingston*, 22 Conn. App. 216, 227, 577 A.2d 734, cert. denied, 216 Conn. 812, 580 A.2d 63 (1990). "We will make *every reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion.*" (Emphasis in original; internal quotation marks omitted.) *Van Nest* v. *Kegg*, 70 Conn. App. 191, 201, 800 A.2d 509 (2002).

The testimony in question undoubtedly was sensitive in its nature, but as the court stated: "[S]ocietal mores have changed significantly. . . . [People are not] going to be unduly influenced by hearing evidence that the defendant . . . had any marital relations outside the marriage." A review of the transcript clearly reveals that at trial, the defendant denied knowing A and taking care of the victim. Under those circumstances, the court, in adopting the state's theory of admissibility, properly concluded that the evidence of the extramarital affair was relevant in that the evidence helped the jury to understand how it was that the defendant came to know and be a caretaker of the victim.

Additionally, the defendant contends that the admission of the evidence was highly prejudicial. "A court

other than the victim. Therefore, we consider the defendant's reliance on *Kindrick* misplaced.

may exclude relevant evidence 'if its probative value is outweighed by the danger of *unfair* prejudice . . . .' (Emphasis added.) Conn. Code Evid. § 4.3." *State* v. *Sanchez*, 69 Conn. App. 576, 593, 795 A.2d 597 (2002). Our Supreme Court has outlined four situations in which prejudice to the defendant could outweigh the probative value of evidence. "These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 757, 760 A.2d 82 (2000). Applying the four factors, we conclude that none of those dangers is present here. Because the court admitted ample other evidence concerning the extramarital affair, namely, testimony from A's friend and DiBella, which the jury heard, the defendant has not demonstrated that the admission of the contested evidence was unreasonable or that it was so prejudicial as to deny him a fair trial.

On the basis of the record before us and the circumstances of this case, we cannot say that the court abused its discretion in admitting the evidence.

The judgment is affirmed.

In this opinion the other judges concurred.