ALPHONSE T. DUBREUIL ET AL. *v.*
OTTO P. WITT ET AL.
(AC 23915)

Foti, Dranginis and Dupont, Js.

---

Argued September 11—officially released December 9, 2003

*Otto P. Witt,* pro se, the appellant (named defendant).

*Joseph X. Du Mond, Jr.,* for the appellees (plaintiffs).

DRANGINIS, J. In this legal malpractice action, we must determine whether following a trial to the court in which the plaintiffs failed to introduce expert testimony as to the standard of care applicable to attorneys who practice before the Superior Court, the trial court properly concluded that the defendant, an attorney licensed to practice in this state, breached the applicable standard of care. We conclude that in this trial to the court, the judge did not need the benefit of expert testimony to determine the standard of care applicable to an attorney engaged in litigation practice and whether the standard had been breached. We affirm the judgment of the trial court.

In his second appeal to this court,[1] the defendant Otto P. Witt, an attorney,[2] claims that it was improper for the court to (1) conclude that he had breached the standard of care applicable to attorneys who practice before the Superior Court, (2) allegedly deny him due process of law by failing to inform him that the court intended to take judicial notice of the applicable standard of care, (3) award damages outside the scope of the allegations of the complaint, (4) conclude that his negligence was the proximate cause of the plaintiffs' injury and (5) conclude that he was in breach of contract. We affirm the judgment of the trial court.

---

[1] The defendant previously appealed from a judgment for the plaintiffs. In *Dubreuil* v. *Witt*, 65 Conn. App. 35, 781 A.2d 503 (2001), this court reversed the judgment and remanded the case for a new trial, concluding that the trial court, *Hon. D. Michael Hurley*, judge trial referee, had denied the defendant the right to cross-examine a witness. Although the defendant had raised the issue of whether expert testimony was needed to conclude that he had committed malpractice in representing the plaintiffs, this court did not reach that issue. Id., 46 n.5.

[2] Witt's law firm, Witt and Associates, P.C., was a defendant at trial, but is not a party to this appeal.

In their two count amended complaint filed April 24, 1997, the plaintiffs[3] alleged, in part, that they had retained the defendant to represent them in a collection action commenced by Deedy Construction Company (Deedy). The plaintiffs further alleged that the defendant had represented them in a negligent manner, violated the Rules of Professional Conduct and breached their contract by failing to attend a pretrial conference, a rescheduled pretrial conference and the short calendar argument on a motion to set aside a judgment of nonsuit that had been entered against them. As a result of the defendant's alleged negligence and breach of contract, Deedy obtained a judgment of foreclosure against the plaintiffs' real property. In addition, as a result of the defendant's negligence and his breach of contract, the plaintiffs suffered harm.

Following the retrial; see footnote 1; held in November, 2002, at which only Alphonse T. Dubreuil and the defendant testified, the court found the following facts, many of which are historical in nature.[4] In March, 1992, Alphonse Dubreuil was the president of A. Dubreuil and Sons, Inc. (corporation), which was a commercial construction business. The corporation used the services of Louis Levine Agency, Inc. (insurance agency), for insurance and bonding purposes. On March 10, 1992, an agent of the insurance agency asked Alphonse Dubreuil to come to the scene of a building fire in New London. A representative of the Aetna Casualty Insurance Company (Aetna) was also present. Due to the damage to the building, the corporation, through Alphonse Dubreuil, was asked to demolish the struc-

---

[3] The plaintiffs are Alphonse T. Dubreuil and Marilyn B. Dubreuil, husband and wife.

[4] The court also took judicial notice of the files in *Deedy Construction Co.* v. *A. Dubreuil Sons, Inc.*, Superior Court, judicial district of New London, Docket No. 101288, which was the collection action, and *Deedy Construction Co.* v. *Dubreuil*, Superior Court, judicial district of New London, Docket No. 107408, which was the foreclosure action.

ture. Alphonse Dubreuil responded that the corporation did not perform demolition work, but that Deedy did. A representative of Deedy was called, and it was agreed that Deedy would perform the demolition and that Alphonse Dubreuil would serve as clerk of the works. The agreement was oral. Although its representative had agreed to pay for the demolition, shortly thereafter, Aetna denied liability on the ground of arson and refused to pay Deedy.

Because Aetna did not pay, Deedy commenced an action against the corporation seeking payment of $67,277.88 for services rendered. Theodore A. Harris, an attorney, represented the corporation in the early stages of the litigation, but he withdrew his appearance in March, 1993. Prior to withdrawing from the case, it appears that Harris had some correspondence with Deedy's attorney about the plaintiffs personally signing a guarantee regarding the debts of the corporation. There is, however, no evidence that the plaintiffs signed the guarantee. At the trial, Alphonse Dubreuil denied that Harris was his attorney[5] and denied that he had agreed to indemnify the corporation. Alphonse Dubreuil also filed an affidavit to that effect, after Deedy had secured a judgment against the plaintiffs.

About the time Deedy commenced its collection action, Alphonse Dubreuil was in failing health, and the corporation was in failing financial condition. Alphonse Dubreuil retained the defendant to represent the corporation in bankruptcy. Alphonse Dubreuil later informed the defendant of the Deedy action and asked him to represent the plaintiffs therein. The defendant filed an appearance in the Deedy action on May 7, 1993. During the summer of 1993, the defendant filed a cross com-

---

[5] Alphonse Dubreuil testified that an agent of the insurance agency had recommended that he talk to Harris, but that he never followed the recommendation.

plaint against the insurance agency and impleaded Aetna as a third party defendant. The pleadings in the action were closed, and the matter was scheduled for a pretrial conference in June, 1994. The defendant did not attend the pretrial. On the date of the pretrial, Alphonse Dubreuil was hospitalized in intensive care.

On June 22, 1994, the court, *Hendel, J.*, entered the following order: "The defendants Alphonse Dubreuil and Marilyn Dubreuil are hereby defaulted on plaintiff's complaint and a nonsuit shall enter on their cross complaint and counterclaim for failure to attend a pretrial." On August 1, 1994, Deedy moved that judgment be rendered against the plaintiffs by reason of the default. On August 23, 1994, Judge Hendel rendered judgment of $67,277.88 against the plaintiffs. The defendant failed to attend the hearing on the motion for judgment.

On September 16, 1994, the defendant filed a motion to set aside the judgment against the plaintiffs, stating that he had informed the court that he would be slightly late for the pretrial on June 22, 1994, but that the default had been entered prior to his arrival at court.[6] The defendant claimed that his late arrival was due to traffic, was neither intentional nor negligent and that the plaintiffs were not liable personally. The motion to set aside the judgment was scheduled for a short calendar hearing on February 6, 1995. The defendant failed to appear and to argue the motion to set aside, which was denied. According to the defendant, he failed to attend short calendar due to injuries he had sustained in a motor vehicle accident. Although he claimed that he had asked the court to decide the motion to set aside on the papers, counsel for Deedy was present for short calendar argument. The defendant made no further efforts to have

---

[6] The defendant never filed a motion to open the judgment of nonsuit rendered in favor of the agency and Aetna.

the judgment set aside. The defendant testified that after the judgment was rendered against the plaintiffs, he attempted to compromise the litigation in the Bankruptcy Court.

The Deedy judgment was not satisfied. Deedy therefore instituted a foreclosure action against the plaintiffs' property in April, 1995. Alphonse Dubreuil discharged the defendant and retained the services of Robert G. Skelton, an attorney. A judgment of strict foreclosure was rendered against the plaintiffs on July 24, 1996, with a finding of debt in the amount of $80,818.20 plus fees. The property could be redeemed for $75,000 before September 24, 1996. The Bankruptcy Court approved a compromise of Deedy's claim against the corporation. The corporation, the insurance agency and Aetna paid Deedy $42,500. The plaintiffs paid Deedy $32,500 as their portion of the settlement and obtained a satisfaction of judgment in the foreclosure action.

The plaintiffs commenced this malpractice action against the defendant in August, 1996. The matter was tried to Judge Hurley; see footnote 1; who rendered judgment for the plaintiffs in May, 1998. The defendant appealed to this court, which reversed the judgment and remanded the case for a new trial. *Dubreuil* v. *Witt*, 65 Conn. App. 35, 781 A.2d 503 (2001) (*Dubreuil I*). The case was tried again to the court, *Hon. Joseph J. Purtill*, judge trial referee, in November, 2002. Judge Purtill also concluded that the defendant's representation of the plaintiffs as alleged in the complaint constituted legal malpractice. The defendant again appealed to this court. We agree that the defendant's conduct violated the standard of care applicable to attorneys who practice before the Superior Court, but for reasons somewhat different from those articulated by the trial court.

Before we address the defendant's claims, we set forth the proper standard of review. "The scope of our

appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Hart* v. *Carruthers*, 77 Conn. App. 610, 612–13, 823 A.2d 1284 (2003).

We also remember that the trier of fact determines the credibility of the witnesses. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony . . . is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002).

I

The defendant first claims that the court improperly concluded that his conduct constituted legal malpractice because the plaintiffs had failed to present expert testimony as to the applicable standard of care. We disagree.

The following additional facts provide a context for our review of that claim. Skelton, the attorney the plaintiffs retained to prosecute the malpractice action against the defendant, had retained an attorney to serve as an expert witness and disclosed that individual to the defendant. Unfortunately, Skelton died shortly before the second trial was to begin. The trial was continued so that the plaintiffs could retain substitute

counsel. Substitute counsel also retained an expert witness, but disclosed the identity of the second expert on the eve of trial. The defendant filed a motion to preclude the plaintiffs from presenting the testimony of the second, recently disclosed expert. The court granted the motion to preclude. Due to illness, the expert disclosed by Skelton was not available to testify, and the court refused to grant the plaintiffs a continuance. During the trial, none of the parties presented any expert testimony.

In its January 22, 2003 memorandum of decision, the court cited the principles of legal malpractice, and stated when there is a need for expert testimony and the circumstances under which a plaintiff need not present expert testimony. The court concluded that the exception to the need to present expert testimony applied in this case because the defendant's conduct was such an obvious and gross want of care and skill that the neglect would be clear even to a layperson. Specifically, the court found that by failing to appear at the June 22, 1994 Deedy pretrial, the defendant permitted a default and a nonsuit to be entered against the plaintiffs. The defendant took no action to set aside the nonsuit and default until after judgment against the plaintiffs had been rendered, and he failed to appear at the short calendar hearing to argue the motion to set aside. The court found that the defendant's conduct was particularly egregious given that the plaintiffs had a good defense to the allegations of personal liability and could have prevailed because Deedy's complaint did not state a cause of action against them. The court concluded that the plaintiffs' allegations of negligence and breach of contract against the defendant had been proven, that the defendant's negligence was the proximate cause of the plaintiffs' damages and awarded the plaintiffs $32,500.

In concluding that the plaintiffs did not need to present expert testimony to prevail in this action, the trial court relied on this court's holding in *Paul* v. *Gordon*, 58 Conn. App. 724, 754 A.2d 851 (2000). In that case, there was such an obvious and gross want of care on the part of the defendant that a layperson would know that the defendant's conduct violated the standard of care. Id., 728. The facts here, however, are distinguishable from *Paul*, in which the plaintiffs had retained an attorney to represent them in a summary process action. Id. The *Paul* attorney did nothing, even though he assured the plaintiffs that he would handle the matter. Id. As a result, the plaintiffs were evicted from their home and lost a substantial sum of money. Id.

Here, the defendant did more than nothing in the Deedy action. He asserted claims against the insurance agency and Aetna on the plaintiffs' behalf. By his admission, the defendant acknowledged that the plaintiffs had a good defense to Deedy's claim. A layperson may be expected to understand that an attorney's failure to attend court proceedings as directed is obvious and gross neglect. Although we recognize that the court may sanction parties whose counsel do not appear for scheduled proceedings; *Mamudovski* v. *BIC Corp.*, 78 Conn. App. 715, 722, 829 A.2d 47, cert. granted on other grounds, 266 Conn. 915, 833 A.2d 467 (2003); we do not hold that an attorney's failure to attend a court-ordered pretrial without more constitutes legal malpractice.

The defendant's alleged malpractice consists of his failure to file a motion to set aside the default and to open the judgment of nonsuit before judgment was rendered, his failure to attend the hearing on the motion for judgment and his failure to attend the hearing on his motion to set aside. Our rules of practice set forth the rules governing those motions. On the one hand, we do not expect a layperson to be familiar with the rules of practice and the importance of setting aside a

default before a judgment is rendered or that the standard for setting aside a default is abuse of discretion. See *Richards* v. *Trudeau*, 54 Conn. App. 859, 738 A.2d 215 (1999). On the other hand, we expect that a judge of the Superior Court is well aware of the rules of practice and the consequences that may flow from an attorney's failure to abide by them. A judge also knows the dire consequences that may befall clients whose attorney does not protect their interests properly.

The appellate courts of this state have set forth the law that applies in an action alleging legal malpractice. "Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . ." (Internal quotation marks omitted.) *Davis* v. *Margolis*, 215 Conn. 408, 415, 576 A.2d 489 (1990). Generally, to prevail in a case alleging legal malpractice, a plaintiff must present expert testimony to establish the standard of proper professional skill or care. *Dunham* v. *Dunham*, 204 Conn. 303, 317, 528 A.2d 1123 (1987), overruled in part on other grounds, *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). Furthermore, the plaintiff must prove "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Vona* v. *Lerner*, 72 Conn. App. 179, 187–88, 804 A.2d 1018 (2002), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003).

"The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. *Davis* v. *Margolis*, [supra, 215 Conn. 416]. There is an exception to

this rule, however, where there is such an obvious and gross want of care and skill that the neglect is clear even to a lay person. Id., 416 n.6. This exception has been applied in the context of a medical malpractice case. *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 750–51, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995)." (Internal quotation marks omitted.) *Paul* v. *Gordon*, supra, 58 Conn. App. 727–28. *Paul* held that the exception applies in cases in which the violation of the standard of care is an obvious and gross want of care. Id., 728.

Before an expert may testify, the court must find that the expert has knowledge beyond that exhibited by every attorney simply as a result of membership in the legal profession. The expert must possess special knowledge that would *help the trier of fact* determine whether the defendant's conduct was in accordance with the standard of care applicable to attorneys under comparable circumstances. Such knowledge may emanate from a myriad of sources, such as teaching, scholarly writings, study or practical experience. See *Davis* v. *Margolis*, supra, 215 Conn. 417.

"In malpractice cases, the expert's testimony must be evaluated in terms of its helpfulness to the trier of fact on the specific issues of the standard of care and the alleged breach of that standard." Id., 416. The practice of law before the Superior Court is governed, in part, by our rules of practice, which include "the admission, qualifications, practice and removal of attorneys." Practice Book § 1-1 (a). Every day, judges of the Superior Court apply those rules to conduct the business of the court. Judges of the Superior Court have authority to implement the rules of practice to facilitate the expeditious and judicious administration of justice in this state. See *Mamudovski* v. *BIC Corp.*, supra, 78 Conn. App. 722. In fact, there may be no expert who knows more about the practice of law before the Superior

Court than a judge of that court. Judges routinely rule on motions, preside at pretrial settlement conferences, conduct jury trials or sit as the trier of fact, among other things. With respect to the specific issues presented in this case, a judge of the Superior Court has the authority to default a defendant or to render a judgment of nonsuit against a plaintiff who fails to comply with the court's orders, including notice to attend a pretrial. See id. A judge of the Superior Court is vested with authority to render judgment pursuant to a default; Practice Book § 17-19; and to exercise discretion to set aside a default or judgment; see Practice Book § 17-43. Negligence and breach of contract actions routinely come before the Superior Court. A judge, therefore, is aware of the standard of care that applies to attorneys practicing in the Superior Court.

There is precedent that a judge of the Superior Court does not need expert testimony to be knowledgeable of practice before the court.[7] Our Supreme Court has held that "courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984). Although the issue here did not concern the reasonableness of attorney's fees, the court was "in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues." Id., 311.

For the foregoing reasons, we conclude that it was not improper for the court to conclude without the benefit of expert testimony that the defendant had violated the standard of care.

---

[7] Our holding is limited to the circumstances of this case. We do not hold or imply that a judge of the Superior Court is an expert in every area of the law and that expert testimony does not have to be presented in cases involving other types of legal malpractice tried to the court.

## II

The defendant's second claim is that the court denied him due process of law by failing to inform him that the court intended to take judicial notice of the applicable standard of care. The defendant has stated that because the court did not tell him that it intended to rely on its own expertise, he was denied due process, namely, the right to cross-examine. He acknowledges that a litigant may not cross-examine the court. He, however, argues that if the court had told him that it intended to rely on its own expertise, he would have presented expert testimony of his own. We review that constitutional claim de novo. We do not agree that the court violated the defendant's right to due process.

"In the context of a civil case, our Supreme Court, in accepting a common law right to cross-examination, stated [t]he right of cross-examination is not a privilege but [is] an absolute right . . . . It is only after the right of cross-examination has been substantially and fairly exercised that the allowance of cross-examination becomes discretionary with the trial court." (Citations omitted; internal quotation marks omitted.) *Dubreuil I*, supra, 65 Conn. App. 40–41.

Having reviewed the transcript of the trial, we conclude that the problem with which the defendant was confronted at trial was not one of due process concerning cross-examination or the court's not telling him that it intended to take judicial notice of the applicable standard of care, as he has argued on appeal. The defendant failed to recognize that the court was relying on its own expertise when it told him that the plaintiffs had established a prima facie case.

The following facts inform our resolution of the defendant's claim. After the plaintiffs rested their case without having presented expert testimony regarding the applicable standard of care, the defendant orally

moved that the action be dismissed for failure to make out a prima facie case. In support of his motion to dismiss, the defendant cited three cases concerning the need for expert testimony in a case involving allegations of legal malpractice. He also articulated the exception to the rule, citing *Paul* v. *Gordon*, supra, 58 Conn. App. 728, and distinguished the facts of *Paul*. In opposing the motion to dismiss, counsel for the plaintiffs encouraged the court to take judicial notice of the defendant's malpractice, as Judge Hurley had done at the first trial. The court declined to do that, noting that in *Dubreuil I*, this court had not reached the issue concerning the need for expert testimony in this case. The trial court, however, denied the defendant's motion to dismiss the case for failure to make a prima facie case.

In denying the motion to dismiss, the court articulated the four elements that the plaintiffs needed to prove to prevail. See *Vona* v. *Lerner*, supra, 72 Conn. App. 187–88. It also stated that the standard applicable to a motion to dismiss is whether the case would go to the jury. The court concluded that there was sufficient evidence to overcome the motion. The court also explained that a judgment could not be rendered at that time, but that the plaintiffs had presented sufficient evidence for the case to go forward. It was time for the defendant to present his case.

We agree with the court that the standard for determining whether the plaintiff has made out a prima facie case is whether there are sufficient facts to submit the case to the trier of fact. Practice Book § 15-8; *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 455, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002). Although the court told the defendant that the plaintiffs had made out a prima facie case as to the four elements necessary to prove a case of legal malpractice, when he presented his case, the defendant did not introduce any expert testimony of his own to overcome the evidence pre-

sented by the plaintiffs. In fact, the defendant never disclosed an expert he intended to call at trial, even after Judge Hurley took judicial notice of his malpractice in the prior trial that was overturned in *Dubreuil I*. The defendant simply failed to rebut the plaintiffs' evidence with expert testimony to the contrary. The court's actions did not deny the defendant due process.

## III

The defendant's next claim is that the court awarded the plaintiffs damages outside the scope of the allegations of the complaint. We are not persuaded.[8]

The essence of the defendant's claim is his contention that the complaint alleges merely that a judgment was rendered against the plaintiffs and that a lien was placed on their real property in Watertown. Those allegations, the defendant claims, were not enough to put him on notice that the plaintiffs had paid any money to Deedy. In support of that claim in his brief, the defendant has included a citation to *Wright* v. *Hutt*, 50 Conn. App. 439, 449, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). "The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . What is in issue is determined by the pleadings and these must be in writing. . . . Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein. . . . A judgment upon an

[8] In his brief, the defendant argues that the court made no finding of fact with respect to the defendant Witt and Associates, P.C., and that it was "clear" error for the court to render judgment against it. As stated in footnote 2, Witt and Associates, P.C., is not a party to this appeal, as the defendant filed a pro se appearance and identified himself as the appellant. Furthermore, the defendant has cited no law in support of his argument and provided no reasoning or analysis for his argument. See *State* v. *Harvey*, 77 Conn. App. 225, 230 n.8, 822 A.2d 360, cert. denied, 265 Conn. 906, 831 A.2d 252 (2003). For those reasons, we decline to address it.

issue not pleaded would not merely be erroneous, but it would be void." (Citations omitted; internal quotation marks omitted.) Id., 449–50.

The defendant's claim appears to be an evidentiary one in that the court allowed the plaintiffs to present evidence of their damages. "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Internal quotation marks omitted.) Id., 445.

*Wright* was a medical malpractice action in which the plaintiffs based their claim on a breach of the duty to inform the plaintiff wife of the risk associated with a particular surgical procedure and not on a breach of the duty to inform the plaintiff wife of medical alternatives. The court denied the plaintiffs' request to revise their complaint and precluded them from presenting expert testimony as to the medical alternatives to the surgical procedure. Id., 448–49. The issue in *Wright* was the manner in which the defendant had been negligent, if at all, a fact that had to be pleaded for evidence to be relevant to the case.

What the defendant overlooks in his argument is that in addition to the allegations he cites in his brief, i.e., that the plaintiffs alleged that Deedy had secured a judgment against them in the amount of $67,277.85 and placed a lien on their real property, the plaintiffs also

alleged that they had suffered harm as a result of the defendant's negligence and prayed for damages. Their summons and complaint contain a statement of the amount in demand in excess of $15,000.

"[T]he interpretation of pleadings is always a question of law for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Benedetto* v. *Wanat*, 79 Conn. App. 139, 148, 829 A.2d 901 (2003). Although the plaintiffs' allegations were not pleaded as artfully as they might have been, they were not so vague as to conceal the theory under which the plaintiffs were proceeding, and the plaintiffs should not have been precluded from presenting evidence as to the manner in which they were harmed. The court, therefore, did not abuse its discretion in admitting Alphonse Dubreuil's testimony that the plaintiffs had paid Deedy $32,500 in satisfaction of the judgment lien.

The defendant also has argued that there was no documentary evidence to substantiate Alphonse Dubreuil's testimony that the plaintiffs, not the corporation, paid $32,500. The short answer to that argument is that documentary evidence was not required. The court was permitted to accept Alphonse Dubreuil's testimony as credible.

IV

The defendant's fourth claim is that the court improperly concluded that his negligence was the proximate cause of the plaintiffs' injuries. We do not agree.

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . As [our Supreme Court] observed . . . [l]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . .

"The second component of legal cause is proximate cause, which [our Supreme Court has] defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The proximate cause requirement tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty." (Internal quotation marks omitted.) *Vona* v. *Lerner*, supra, 72 Conn. App. 189.

"[P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 357–58, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001)." (Emphasis in original; internal quotation marks omitted.) *Vona* v. *Lerner*, supra, 72 Conn. App. 187.

Here, the court found that the defendant's wrongful acts and omissions in representing the plaintiffs were the proximate causes of the judgment being rendered against them in the Deedy action. The judgment resulted in a lien being placed on their residential property,

which was foreclosed. To save their property, the plaintiffs were forced to pay $32,500 to Deedy. Our review of the transcript and the exhibits at trial support the court's conclusion.

"An issue of proximate cause is ordinarily a question of fact for the trier. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion . . . ." (Citation omitted; internal quotation marks omitted.) *B & D Associates, Inc.* v. *Russell*, 73 Conn. App. 66, 77, 807 A.2d 1001 (2002). The audacity of the defendant's claim stretches the limits of making fair and accurate representations to this court, particularly in view of his own words that are in evidence, as we will discuss.

The court found that the defendant had filed an appearance in the foreclosure action and a disclosure of defense that the judgment forming the basis of the foreclosure was void or voidable, and that the action against the plaintiffs violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The defendant also filed an answer and a counterclaim against Deedy's attorney, alleging that the attorney knew the judgment was invalid and that the plaintiffs never personally had guaranteed the contract between Deedy and the corporation.

Furthermore, in his September 9, 1994 affidavit submitted as an attachment to the motion to open the judgment against the plaintiffs in the Deedy action, the defendant attested that "[a] good defense to the [Deedy] action existed at the time of default and judgment, in that Alphonse T. Dubreuil and Marilyn Dubreuil are not personally liable for the corporate debt at issue in this action. . . . The basis for individual liability alleged by plaintiff consists solely of an unsigned mortgage agreement, the attachment of which to plaintiff's complaint appears intended to mislead the Court into a

belief that the document was in fact executed." Obviously, the defendant believed himself that the plaintiffs were not liable to Deedy.

Finally, when Skelton took over the legal matters the defendant was handling for the plaintiffs, the defendant sent him a memorandum informing him of the status of the cases. The defendant placed that memorandum in evidence. In the memorandum, the defendant stated in part that "[t]he case was scheduled for a pretrial in June. My partner was supposed to cover the pretrial but forgot and showed up at the office. I then called the court and left for the pretrial. The judge was informed that I would be about fifteen minutes late. I arrived at court twenty minutes late and [Judge] Hendel informed me that he had already entered a default and would not reopen it and my clients better settle." On the basis of the defendant's representations alone, his failure to appear at the pretrial caused the plaintiffs harm.

The court, therefore, properly concluded that the defendant's negligence was the proximate cause of the plaintiffs' harm.

## V

The defendant's last claim is that it was improper for the court to find that he had breached the contract with the plaintiffs. We disagree.

In the second count of their complaint, the plaintiffs alleged that as a result of the defendant's negligent failure to represent them in the Deedy action, he violated several of the Rules of Professional Conduct. They further alleged that as a result of his negligence and violations of the Rules of Professional Conduct, the defendant breached his contract with them. On appeal, the defendant argues correctly that violations of the Rules of Professional Conduct are not designed to form

the basis of an independent cause of action for civil liability. *Gagne* v. *Vaccaro*, 255 Conn. 390, 403, 766 A.2d 416 (2001).

The defendant's argument, however, fails because the court made no finding that he violated the Rules of Professional Conduct, and a violation of the rules was not the basis of its conclusion that he was liable to the plaintiffs. The court concluded that the defendant's representation of the plaintiffs demonstrated an obvious and gross want of care and skill in that he allowed a default and nonsuit to enter against them by failing to attend the Deedy pretrial, took no action to set aside the nonsuit and default until after judgment had been rendered against them, and failed to attend the short calendar to argue the motion to open the judgment or to take any other action to protect their interests. The basis of the court's decision, therefore, was the defendant's negligent representation of the plaintiffs and not, as he claims, any violation of the Rules of Professional Conduct.

The defendant also argued that there was no evidence to support the plaintiffs' claim that there was a contract between the plaintiffs and the defendants with respect to the Deedy action. The defendant acknowledged that he had agreed to represent the corporation in bankruptcy; there was a written agreement to that effect. Alphonse Dubreuil testified that during the defendant's work on the bankruptcy matter, he asked the defendant to represent the plaintiffs in the Deedy action. The fact that the defendant agreed to represent the plaintiffs is supported by evidence that he entered an appearance in the matter and filed pleadings on behalf of the plaintiffs. His claim before this court is disingenuous.

The judgment is affirmed.

In this opinion the other judges concurred.