STATE OF CONNECTICUT *v.* MICHAEL A. MAZZEO
(AC 21365)

Schaller, Dranginis and Bishop, Js.

Argued October 15, 2002—officially released January 7, 2003

*Hubert J. Santos*, with whom, on the brief, were *Hope C. Seeley* and *Patrick S. Bristol*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael J. Sullivan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Michael A. Mazzeo, appeals from the judgment of conviction, rendered after a jury trial, of fraudulent receipt of workers' compensation benefits in violation of General Statutes § 31-290c (a) (2) and larceny in the first degree in violation of General Statutes § 53a-122. The defendant claims that the trial court improperly (1) excluded exhibits that were central to his case, (2) introduced prejudicial material to the jury prior to conducting a poll and (3) instructed the jury on reasonable doubt, thereby depriv-

ing him of his right to a fair trial. We affirm the judgment of the trial court.

The defendant was employed by United Parcel Service (UPS) from 1988 to 1999. During his employment, the defendant suffered injuries that caused him to miss periods of employment. The most recent period for which the defendant collected workers' compensation benefits was from October 2, 1996, until July 8, 1997. The injury associated with those benefits was in the nature of a temporary total disability. An injured worker is entitled to temporary total disability benefits if he is completely disabled from doing any type of work for a specific period of time. Someone who collects temporary total disability compensation is, due to injury, unable to earn any income for a specific period of time.

To ensure that injured workers are paid according to law, claimants are required to complete a workers' compensation document designated as form 1A. Above the signature line on that document, a claimant is warned that "[a]ny person who intentionally misrepresents or fails to disclose any material fact related to the claimed injury may be guilty of a felony." Question five on form 1A asks a claimant whether he has any other employers, to which the defendant answered "none" on January 6, 1997.

Liberty Mutual Insurance Company (Liberty Mutual) was responsible for making workers' compensation payments on behalf of UPS. Liberty Mutual has its own form for determining compensation. On its form, it asked whether the defendant was self-employed or if he had worked since the date of his injury. The defendant answered in the negative as to both inquiries on January 6, 1997.

On January 6, 1997, Lynette Hill, the defendant's case manager at Liberty Mutual, telephoned the defendant to discuss his case. The call was answered with a message

indicating that she had reached Shannon Development Corporation (Shannon Development). When Hill later asked the defendant about Shannon Development, he explained that it was his wife's business. Hill became suspicious and asked a company called Countermeasures Investigations (Countermeasures) to explore the matter. An investigation revealed that the defendant was the manager and primary operating officer of Shannon Development, a company that developed property and built homes. According to records seized from the defendant's home on January 7, 1999, prior to his arrest, Shannon Development had a gross income in excess of $137,000 from October, 1996, until June, 1997, a period of time during which the defendant also collected more than $15,000 in disability benefits due to the injury he suffered at UPS.

Thereafter, the defendant was charged with fraudulent receipt of workers' compensation benefits in violation of § 31-290c (a) (2) and larceny in the first degree in violation of § 53a-122. The prosecution alleged, in a long form information, that the defendant "did intentionally nondisclose and failed to reveal material facts affecting his claim for Worker Compensation Employment benefits . . . ."

The jury returned a verdict of guilty as to both counts, and the court sentenced the defendant to two concurrent ten year prison terms, execution suspended after eighteen months. This appeal followed. Additional facts will be set forth as necessary.

I

ADMISSIBILITY OF THE COUNTERMEASURES
RECORDS

The defendant claims that the court should have allowed him to introduce into evidence certain reports prepared by Countermeasures. The defendant's strat-

egy at trial rested on the premise that Liberty Mutual was aware that he was employed and working for Shannon Development at the time he completed the application forms for disability payments. Consequently, the defendant contends that there was no material nondisclosure when he answered "no" to the questions concerning other employers, self-employment and whether he had worked since his injury. Toward that end, the defendant attempted to introduce six surveillance reports, marked as exhibits A through F, prepared by Countermeasures for Liberty Mutual to demonstrate that Liberty Mutual knew of his association with Shannon Development well before he completed the workers' compensation application forms. The court sustained the state's objection to the introduction of the reports on the ground that although they were business records within the hearsay exception, they contained inadmissible opinion and hearsay statements. The court did allow redacted versions of the reports to be admitted. The redacted versions contained only Countermeasures' letterhead, a reference to the defendant, the date and Hill's name as the addressee. The redacted versions did not contain any of the substance of the reports.

Our standard of review for evidentiary rulings is as follows. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Citations omitted, internal quotation marks omitted.) *State*

v. *Berger*, 249 Conn. 218, 229–30, 733 A.2d 156 (1999). "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Chapman*, 229 Conn. 529, 544, 643 A.2d 1213 (1994).

For a defendant to be convicted of fraudulent receipt of workers' compensation benefits under § 31-290c (a) (2), the state is required to prove that he made an "intentional nondisclosure of any material fact affecting such claim or the collection of such benefits . . . ." General Statutes § 31-290c (a) (2). It is the defendant's contention that exhibits A through F were essential to prove his defense that he made no material nondisclosure to Liberty Mutual because the offered documents revealed that Liberty Mutual had knowledge of his employment. That claim apparently is premised on the notion that the defendant should be excused from criminal liability for making a false statement and omitting material information regarding his employment on form 1A and the Liberty Mutual application form simply because Liberty Mutual had prior knowledge that he did not truthfully complete the forms. In support of that novel theory, the defendant has provided no decisional law or analysis other than to cite to the fact that the prosecution, in closing argument, argued to the jury that there was no evidence that Liberty Mutual knew of the defendant's employment at the time he completed the subject applications. Although the state may have been misdirected to urge that proposition on the jury, the fact that the state may have sipped vinegar does not thereby change it to fine wine. We agree with the state's claim on appeal that those documents, exhibits A through F, were not relevant to any viable theory of

defense. Whether the defendant completed his application form for workers' compensation falsely and omitted material information can be determined by reference to the documents themselves and the evidence of his concomitant employment without regard to whether Liberty Mutual was, in fact, aware of his deceit. Because the question of whether Liberty Mutual had independent knowledge of the defendant's employment was not relevant to his criminal liability, the court's exclusion of the substance of the reports was correct, albeit on a different basis. The documents, exhibits A through F, were not exculpatory. As such, they were not relevant.

## II

## THE JURY POLL

On August 7, 2000, the jury returned a verdict of guilty on both charges against the defendant. The verdict was accepted and recorded by the court. The clerk then asked the jury, as a group, whether the verdict was unanimous. The court then spoke to the jurors, thanking them for the job they did and mentioning their dedication to their civic duty.[1] The jurors were excused and

[1] The court stated in relevant part: "Ladies and gentlemen, the court wants to thank you for the effort that you put in in regard to this case. You've shown extreme dedication and full attention to your responsibility. It has been a long trial. I hope and expect that it came into the time parameters or close to what we said. There were a number of times when court was suspended and not in session. I don't want you to think the court was taking advantage of your time and attention. As I told you at the outset, there are many occasions where it is the juror's responsibility to participate, and there are legal matters that do not require your attention so that you are out of the courtroom for a period of time. This has been a trial that has included a lot of exhibits and a lot of evidence and testimony and [that has] required your undivided attention. It is apparent that you have kept your oaths individually and collectively and rendered these verdicts. At this time, you have fulfilled your obligation to the state, and you are going to be excused with our thanks for the performance that you have rendered on behalf of the people of the state of Connecticut. . . . I also will be available to talk to you briefly if you have any questions after the court adjourns. I realize it's late in the day, and I'm sure you are anxious to leave. . . . But, again,

released, and the court asked the sheriff to escort them back to the deliberation room.

The court then asked if there were any motions, and the defendant responded that he wanted the jury polled. The court stopped the jurors as they were preparing to exit the courtroom and asked them to assume their previous positions in the jury box. The jurors complied, and they were individually polled on each count. The verdict on each count was unanimous. The jury was then excused, and the defendant offered no objection to the process used to poll the jury.

The defendant claims on appeal that the court introduced prejudicial material to the jury[2] prior to conducting the poll and improperly discharged the jury prior to conducting the poll, thereby depriving him of his constitutional right to a unanimous verdict. Because the defendant did not preserve his claim for appeal, we need not afford it review. Additionally, the defendant has failed to satisfy the requirements for review of an unpreserved claim under either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine. Practice Book § 60-5.

Under Practice Book § 60-5, an appellate court "shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." The defendant concedes that he did not raise his challenge to the jury poll at trial, but seeks review under either *Golding* or the plain error doctrine.

---

on behalf of the people of the state of Connecticut, we want to thank you for your performance here this afternoon, and at this time you're excused and released of all further responsibility for this case. Thank you."

[2] Apparently, the defendant characterizes the court's comments to the jury, such as "thanks for the performance that you have rendered on behalf of the people of the state of Connecticut," as "prejudicial material."

To invoke *Golding* review, an appellant must allege, minimally, a violation of a constitutional right. See *State* v. *Golding*, supra, 213 Conn. 239–40. In that respect, the defendant's claim fails because it is not of constitutional magnitude alleging a violation of a fundamental right. The right to a jury poll is mandated by Practice Book § 42-31.[3] That right, although " 'a corollary to the defendant's right to a unanimous verdict,' " is not, however, one "of constitutional dimension." *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000). As such, review under *Golding* is denied.

The defendant also seeks plain error review of his claim. "[P]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *O'Neil*, 67 Conn. App. 827, 835–36, 789 A.2d 531 (2002). We conclude that the defendant's claim does not merit review under that doctrine. The court's comments to the jurors can be reasonably understood as merely thanking them for the performance of their public duty and not as commending them on their verdict.[4]

---

[3] Practice Book § 42-31 provides: "After a verdict has been returned and before the jury have been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or they may be discharged."

[4] The defendant's reliance on *McCullough* v. *State*, 10 Ga. App. 403, 73 S.E. 546 (1912), and *United States* v. *Randle*, 966 F.2d 1209 (7th Cir. 1992), is misplaced. Those cases can be distinguished easily on their facts. In *McCullough*, following the jury's verdict of guilty, but before a poll was taken, the court imposed a sentence of twenty years, the maximum punishment allowed for the defendant's crime. *McCullough* v. *State*, supra, 406.

## III

## THE JURY INSTRUCTIONS

The defendant's final claim is that the court's instructions on reasonable doubt[5] impermissibly diluted the state's burden of proof, thereby depriving him of his constitutional right to a fair trial. We disagree.

The defendant contends that the following phrases contained misstatements of law: "[N]ot a surmise or a guess or a mere conjecture"; "not a doubt suggested

On appeal, the defendant's conviction was reversed because the natural inference of the court's imposition of the maximum sentence is that the court strongly approved of the jury's verdict. Id. The court's statements in the present case could lead to no such inference. In *Randle*, following the jury's verdict of guilty, but before a poll was taken, the court read aloud a memorandum from the probation department that recounted the defendant's numerous arrests and convictions. *United States* v. *Randle*, supra, 1213. The defendant's conviction was reversed because the jury was subjected to outside influence before an objection could be made. Id., 1214. In the present case, the court's statements to the jury were unobjectionable, as they did not contain biased or extraneous information.

[5] The court's instructions were as follows: "The meaning of reasonable *doubt* can be arrived at by emphasizing the word 'reasonable.' It's not a surmise or a guess or a mere conjecture; it is not a doubt suggested by counsel which is not warranted by the evidence. It is such a doubt as in the serious affairs that concern you, you would heed. That is, it's a doubt that would cause reasonable men and women who hesitate to act upon it in matters of importance. It is not hesitation springing up from any feelings of pity or sympathy for the accused or any other persons who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that's honestly entertained and is reasonable in light of the evidence after a fair comparison and careful consideration of the entire evidence.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that after hearing all the evidence, if there is something to the evidence or the lack of evidence that leaves in the minds of the jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

by counsel"; "a doubt as in the serious affairs that concern you, you would heed"; "a real doubt, a honest doubt"; "a doubt that's honestly entertained and is reasonable in light of the evidence after a fair comparison and careful consideration of the entire evidence"; and "proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

"It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . At the same time, by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. . . . [Consequently, the defendant] in a criminal case [is] entitled to a clear and unequivocal charge by the court that the guilt of the [defendant] must be proved beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 370–71, 796 A.2d 1118 (2002).

"In determining whether a trial court's charge satisfies constitutional requirements, however, individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n

reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Walsh,* 67 Conn. App. 776, 798, 789 A.2d 1031, cert. denied, 260 Conn. 906, 795 A.2d 546 (2002).

After our review of the jury instructions as a whole, we fail to find any language that would mislead the jury. Also, a "microscopic search for possible error"; id.; although not necessary, fails to reveal any language that has not previously been upheld as proper. See *State* v. *Whipper,* 258 Conn. 229, 297, 780 A.2d 53 (2001) ("[Our Supreme Court] consistently [has] held that the definition of reasonable doubt as a 'real doubt, an honest doubt' . . . a 'doubt which in the serious affairs which concern you in everyday life you would pay heed and attention to' does not dilute the state's burden of proof when such definitions are viewed in the context of an entire charge. . . . [Our Supreme Court] also [has] condoned instructions that similarly explained that reasonable doubt was not 'doubt suggested by counsel . . . .' "); *State* v. *Griffin,* 253 Conn. 195, 206, 749 A.2d 1192 (2000) ("[Supreme Court has] approved a reasonable doubt instruction containing the statement that such a doubt is not 'a surmise, a guess or a conjecture' "); *State* v. *Sivri,* 231 Conn. 115, 131, 646 A.2d 169 (1994) (Supreme Court noted "familiar language regarding proof beyond a reasonable doubt . . . [i.e., that it is] 'proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion' "); *State* v. *Anderson,* 65 Conn. App. 672, 686, 783 A.2d 517 (2001) ("court's instruction that '[reasonable doubt] is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful

examination of the entire evidence presented in the case' " has consistently been upheld).

Because all of the language the defendant challenges has been upheld consistently in Connecticut courts, we conclude that the court's instructions on reasonable doubt were proper and did not impermissibly dilute the state's burden of proof. The defendant was not deprived of his constitutional right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

