NEDZMIJE MAMUDOVSKI *v.* BIC
CORPORATION ET AL.
(AC 21957)

Foti, Dranginis and Bishop, Js.

Argued May 8—officially released August 19, 2003

*John T. Bochanis*, with whom, on the brief, was *Thomas J. Weihing*, for the appellant (plaintiff).

*Francis P. Alvarez*, with whom, on the brief, was *Christina Calise Feeny*, for the appellee (named defendant).

*Opinion*

BISHOP, J. The plaintiff, Nedzmije Mamudovski, appeals the judgment of the trial court rendered in favor of the defendant BIC Corporation.[1] The plaintiff claims that the court improperly (1) granted the defendant's motion for summary judgment on her negligence claim set forth in count one of her amended complaint, (2) precluded and limited the testimony of a witness and (3) precluded evidence of the defendant's obligation under the Workers' Compensation Act, General Statutes § 31-275 et seq., to provide her light duty work. We affirm the judgment of the trial court in part and reverse it in part.

The following facts and procedural history are pertinent to our discussion of the issues raised on appeal. The plaintiff commenced employment with the defendant in January, 1979, as a production worker. On March 16, 1988, the plaintiff suffered a herniated disc during her employment, for which she filed a workers' compensation claim. The plaintiff returned to light duty work in July, 1991, with physical restriction orders from her physician, limiting her physical activities at work. The defendant provided the plaintiff with light duty work,

[1] Steven Burgert and Joseph Costa also were named as defendants. The plaintiff has not pursued an appeal as to those individuals. Consequently, the term "defendant" refers only to BIC Corporation.

but also required her to perform other tasks that she claims were not light duty in nature.

In late 1993, the defendant hired a private investigator to videotape the plaintiff outside of work. On February 9, 1994, the plaintiff was summoned to meet with Joseph Costa, the defendant's human resources manager, who told her that she had been observed on videotape doing activities that were inconsistent with the physical restrictions she had claimed when she returned to work three years earlier. The plaintiff was then discharged for being "dishonest."

When the plaintiff became upset and began crying after being notified of her discharge, Costa instructed Steven Burgert, the defendant's manager of health and safety, to escort her to her car. Burgert then followed the plaintiff as she left the meeting to go to the ladies' room. While there, the plaintiff fainted, hitting her head on the floor. At some point, Burgert went into the bathroom and helped the plaintiff up. He then escorted the plaintiff to a security guard and instructed the guard to take the plaintiff to her car. As she was being escorted, the plaintiff asked the guard where she was and whether her husband was present. The guard answered that she was in the defendant's parking lot and that her husband was not present. She was then allowed to drive away from the property.

After she left the defendant's property, driving her motor vehicle, the plaintiff fainted again and her vehicle collided with a telephone pole. As a result, she sustained personal injuries and was hospitalized for five days. The plaintiff claims to have no memory from the time she was walking to her car under escort until she later woke up in the hospital.

The plaintiff brought a three count complaint. The first count, a negligence claim, alleged that the defendant and certain of its employees were negligent in that

they escorted her to her car and failed to prevent her from driving when they knew it would not be safe for her to do so. The second count alleged retaliatory discharge in violation of General Statutes § 31-290a, claiming, in essence, that the defendant had terminated her employment in retaliation for her exercising her rights pursuant to the Workers' Compensation Act. The final count alleged wrongful discharge in violation of public policy as set forth in General Statutes § 31-290a.

Trial was scheduled to commence on March 21, 2001. The court, however, conducted hearings on preliminary issues raised by the parties on March 21, March 27, March 28, April 3 and April 4, 2001, following which the court granted an oral motion for summary judgment made by the defendant concerning the first count of the plaintiff's complaint. After a trial on the remaining two counts, the jury returned a verdict in favor of the defendant. This appeal followed the court's denial of the plaintiff's motion to set aside the verdict. Additional facts will be set forth as necessary.

I

The plaintiff's first claim is that the court improperly granted the defendant's motion for summary judgment with respect to her negligence claim. Specifically, the plaintiff challenges the court's decision on the basis of its finding that an allegation in her second count was a judicial admission that foreclosed her claim of negligence.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court

must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

During pretrial hearings, the defendant filed a pleading titled "Motion for Order Confirming [the Plaintiff's] Judicial Admission and Dispensing with Further Proof of Defendants' Special Defense under [General Statutes § 31-284 (a), workers' compensation exclusivity]." That motion was, as the court described it, effectively, a motion in limine. The defendant argued that the following allegation contained in paragraph four of the second count of the plaintiff's complaint was a judicial admission that precluded her from proceeding with her negligence claim in count one:

"4. On or about March 1998 and February 9, 1994, the plaintiff was injured during the course of her employment with the defendant."

The gravamen of the defendant's claim is that because the plaintiff alleged in her second count that she had been injured in March, 1998, and on February 9, 1994, in the course of her employment, she had no legal right to bring a negligence action (count one) against the defendant for injuries sustained on February 9, 1994, because the filing of a workers' compensation claim against her employer is an exclusive remedy. After argument on March 27, 2001, the court granted the defendant's motion, finding that the statement in count two was a judicial admission having bearing on the allegations of count one. On the following day, March 28, 2001, the court entertained and granted an oral motion for summary judgment by the defendant on the first count in the plaintiff's complaint.

The plaintiff challenges the court's decision to grant summary judgment on several grounds: (1) Practice Book §§ 17-44 and 17-45 prohibited such a result, (2) the allegation in the second count that was found to be a judicial admission did not encompass the injuries described in the first count of the complaint, (3) the allegation at issue was denied by the defendant and could not have been a judicial admission, and (4) the allegation was conclusory and not determinative of the issue of exclusivity of the Workers' Compensation Act.

## A

The plaintiff's first argument is that Practice Book §§ 17-44[2] and 17-45[3] prohibit the court from granting a motion for summary judgment in the manner in which it did. She argues that because the defendant made its motion for summary judgment orally, without supporting affidavits, and because the court acted on the motion at that time instead of placing it on the short calendar, she was precluded from adequately responding to the motion and thereby was prejudiced.

The defendant argues that strict adherence to the rules of practice is neither required nor warranted. In addition, the defendant claims that the parties' memoranda to the court concerning whether the plaintiff's allegation was a judicial admission satisfied any requirement for briefing or argument required by the rules of

[2] Practice Book § 17-44 provides in relevant part: "In any action, except administrative appeals which are not enumerated in Section 14-7, any party may move for a summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial. . . ."

[3] Practice Book § 17-45 provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority otherwise directs. . . ."

practice. Further, the defendant argues that the plaintiff waived any objection to the court's decision because she did not request a continuance and, instead, engaged in argument before the court.

"We review case management decisions for abuse of discretion, giving [trial] courts wide latitude. . . . A party adversely affected by a [trial] court's case management decision thus bears a formidable burden in seeking reversal. . . . A trial court has the authority to manage cases before it as is necessary. . . . Deference is afforded to the trial court in making case management decisions because it is in a much better position to determine the effect that a particular procedure will have on both parties. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice. . . .

"We will not disturb a trial court's decision regarding case management unless after carefully examining the factual circumstances of the case, we determine that there was an abuse of discretion. . . . Abuse is not present if discretion is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and [it is] directed by the reason and conscience of the judge to a just result. . . . And [sound discretion] requires a knowledge and understanding of the material circumstances surrounding the matter . . . ." (Citations omitted; internal quotation marks omitted.) *Krevis* v. *Bridgeport*, 262 Conn. 813, 818–19, 815 A.2d 1188 (2003).

In *Krevis*, the defendant filed a motion in limine on the eve of trial to preclude evidence of punitive damages and attorney's fees, which the court granted. Id., 815. The plaintiff immediately questioned the nature of the

ruling because he believed it was effectively a ruling that a governmental immunity statute applied to the case. Id. The court responded that the statute did apply and that it could make a ruling on the statute's effect if the plaintiff wanted. Id., 815–16. The plaintiff's counsel requested a recess to confer with his client, which was granted, and returned to ask the court to make a ruling at that time instead of the possibility that it might make such a ruling after days of evidence. Id., 816. The defendant interjected that an oral motion for summary judgment might be an appropriate way to resolve questions of the statute's applicability. Id. The court acknowledged the irregularity of an oral summary judgment motion, and, after a brief colloquy with the plaintiff's counsel, granted the motion and dismissed the case. Id. The plaintiff appealed, claiming that the court's grant of the defendant's oral motion for summary judgment violated the provisions set forth in the rules of practice. Id., 814.

Our Supreme Court held that under the particular circumstances of the case, the court's action was not improper because the plaintiff had waived compliance with the requirements of the rules of practice. Id., 824. The court reasoned that it previously had "recognized a party's ability to waive rights authorized by the provisions of the Practice Book." Id., 823. The court stated that "[t]o determine the presence of waiver, there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived. . . . It must be shown that the party understood its rights and voluntarily relinquished them anyway. . . . Each case should be considered upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the party that is waiving its rights." (Citations omitted; internal quotation marks omitted.) Id.

The Supreme Court then reviewed the transcript and found that the record of discussions between the plaintiff's counsel and the trial court revealed that counsel was well aware of the procedural requirements for summary judgments, and that he knowingly had waived compliance with the provisions of our rules of practice. Id., 823–24. As a consequence, the Supreme Court held that the trial court did not abuse its discretion, as the rules of practice are designed to be liberally construed. Id., 824.

From *Krevis*, we discern that the requirements of the rules of practice for filing a motion for summary judgment must be followed absent a waiver by the affected party. Our review of the record in this case reveals that not only did the plaintiff not waive the procedural requirements of the rules of practice, but on several occasions during the hearing, voiced objections and stated that the procedural irregularity had prejudiced her ability to respond effectively to the defendant's oral motion for summary judgment. It is plain from the record that not only did the plaintiff not make a knowing waiver of the procedural requirements of the rules of practice, but that she continuously objected to the court's actions.[4]

---

[4] The following colloquy in relevant part occurred between the parties' counsel and the court on March 28, 2001:

"The Court: Okay, counsel, after conference in my chambers, have—and my discussion over the procedural aspects of what has occurred thus far, I indicated—there was an indication that an oral motion for summary judgment was to be presented today? . . .

"[Defense Counsel]: Your Honor, the [defendant] will move for—will move for summary judgment on the first count of the revised complaint. That count alleges—it states a cause of—alleges negligence, and given the court's ruling yesterday on the defendant's motion for an order confirming the—the plaintiff's judicial admission and dispensing with further proof of the defendant's special defense, under the workers' compensation exclusivity provisions, we move for summary judgment at this time on the first count, the negligence claim.

"The Court: . . . did you want to be heard?

"[Plaintiff Counsel]: Yes, Your Honor, with respect to the oral motion being made for the first time at twelve—well, it's a little bit—a couple of

This case is distinguishable from *Krevis* because in *Krevis*, the trial court proceeded only after it had

minutes before twelve, today, March 28. I would object to such motion.

"We were called in for trial on this matter, and we're here for trial on this matter; they would need the court's permission to file it. Since this has been assigned for trial, I would object to it. The Practice Book requires fifteen days, minimum, before it gets placed on the short calendar.

"The Court: With regard to the issue of court permission, I've invited the motion, so, obviously, it has——the motion has been made with the court's permission.

"[Plaintiff's Counsel]: Okay. So, the court has granted permission then, is that right?

"The Court: Yes.

"[Plaintiff's Counsel]: Okay. With respect to that, then, again, fifteen days, pursuant to § 17-45 of the Practice Book, fifteen days is the requirement and the wording says, 'shall not be held less than fifteen days'; it doesn't say 'may.'

"With respect to § 17-47 of the Practice Book, it indicates that in addition, continuances may be granted to object to the motion for summary judgment. With respect to the merits of the claim, I've orally and a brief, two page, written——during lunch break, I prepared, just with respect to the merits of this claim, which they're moving for summary judgment on. The claim which they're moving for summary judgment on was yesterday morning, March 27, they filed a motion for order, confirming what they allege was a judicial admission and dispensing with further proof of their special defense under the exclusivity of the Workers' Compensation Act. At no point in time did they ask for any type of judgment on that. I've objected to the motion as best I could with the time period of yesterday. . . .

"The Court: Okay. Ordinarily, a motion for summary judgment, although it may be filed at any time, there is certain lead time that is provided for in the Practice Book and also that it is to be——the form of the motion is to be in writing.

"The court believes that it has the inherent power to oversee the efficient trial of issues before it. It believes that this is the most efficient means of accomplishing that objective, although some of the provisions may not be strictly adhered to.

"I've heard no prejudice asserted by the plaintiff because we have not observed any of the procedural provisions of the summary judgment rule. I don't think there are any, from what I understand it to be, understand the claims here to be.

"It should be observed that this court has invited the parties to suggest appropriate procedures to accomplish what was done yesterday, and that was a ruling on the motion in limine by the defendant . . . .

"The court made its finding on the record yesterday, as a result of written memoranda that had been supplied to the court, at its request, and oral argument which lasted approximately the whole day, and the court felt that

explained to the plaintiff the consequences of ruling on an oral motion for summary judgment and had received counsel's assent to the procedure. Unlike the situation in *Krevis*, the court here ruled on the defendant's oral motion for summary judgment over the plaintiff's continuing objection that she had not been afforded a sufficient opportunity to respond to the motion. Because the court bypassed the procedural requirements of Practice Book §§ 17-44 and 17-45, and did not receive a knowing waiver of those requirements from the plaintiff, it was an abuse of discretion for the court to rule on the defendant's oral motion for summary judgment. Accordingly, the court's judgment with respect to count one must be reversed.

## B

Although our determination that the court incorrectly granted the defendant's oral motion for summary judgment effectively disposes of that issue, we reach the

both sides not only had ample time to argue the merits of their respective positions, but had ample notice of the nature of the claims that were being made so as to prepare their respective arguments, and these arguments were prepared.

"There was no claim that either side needed more time to make their arguments with regard to that issue until after the issue was decided. I think if you're going to claim that you don't have enough time to argue, the time to make that claim is before argument is engaged, not after the argument is over and the decision has been made.

"So, I think that although some of the provisions of the rules have not been strictly observed, that to do—to strictly observe those rules in this instance would be exalting form over substance, and therefore the court has elected to address the summary judgment that has been made and as I have indicated, to invite it so that, procedurally, it can accomplish what it did—attempted to accomplish yesterday and that is to terminate the negligence action for the reasons indicated yesterday on the record yesterday. . . .

"For all of those reasons, for the reasons I've indicated yesterday, the motion for summary judgment, presented by the [defendant] orally this morning, now this afternoon, is granted. . . .

"[Plaintiff's Counsel]: Your Honor?

"The Court: Yes, I'm sorry? Did you want to say something?

"[Plaintiff's Counsel]: Yes, just in response, Your Honor—

"The Court: I wasn't inviting a response.´. . . You've had an opportunity

plaintiff's claim that the court's decision was substantively incorrect as well due to the likelihood that the issue will arise again on remand. Although the plaintiff asserts several bases for her claim that the court's ruling was substantively incorrect, we believe that the question of whether the statement by the plaintiff in count two was, in fact, a judicial admission is dispositive. We believe that it was not a judicial admission.

Normally, a court's determination of whether a particular statement made by a party in litigation is a judicial admission involves a factual determination. *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 609, 816 A.2d 719, cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003). In this case, however, the court's determination involved an interpretation of the pleadings. "The interpretation of pleadings is always a question of law for the court." (Internal quotation marks omitted.) *Sauerwein* v. *Bell*, 17 Conn. App. 697, 702, 556 A.2d 613, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989). Thus, we are confronted with a mixed question of law and fact. In such a circumstance, our review is plenary. See *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 737–38, 779 A.2d 156 (2001).

"Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings." (Internal quotation marks omitted.) *Macy* v. *Lucas*, 72 Conn. App. 142, 153, 804 A.2d 971, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002). "They excuse the other party from the necessity of presenting evidence on the fact admitted and are conclusive on the party making them. . . . To the extent that they dispense with evidence, they are similar to facts judicially noticed. . . . A party is bound by a concession made during the trial by his attorney."

---

to present your case. You've indicated your objection, I respectfully disagree with your objections for the reasons I've indicated on the record."

*Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 742, 805 A.2d 76 (2002).

"Factual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in pleading dispenses with proof, and is equivalent to proof." (Internal quotation marks omitted.) *Kronberg* v. *New Hampshire Ins. Co.*, 69 Conn. App. 330, 333, 794 A.2d 561, cert. denied, 260 Conn. 934, 802 A.2d 88 (2002). "A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified." *Hirsch* v. *Thrall*, 148 Conn. 202, 206–207, 169 A.2d 271 (1961).

We find merit to the plaintiff's claim that the subject allegation in count two, though factual, was more in the nature of an untutored opinion or conclusion than the recitation of a fact within her knowledge. Indeed, whether an employee is within the course of employment when injured is a factual determination to be made by a workers' compensation commissioner after sifting all the evidence through a hearing procedure. "The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." (Internal quotation marks omitted.) *Ferrara* v. *Hospital of St. Raphael*, 54 Conn. App. 345, 350, 735 A.2d 357, cert. denied, 251 Conn. 916, 740 A.2d 864 (1999).

For a factual allegation to be held to be a judicial admission, the fact admitted should be one within the speaker's particular knowledge and one about which the speaker is not likely to be mistaken. "A party's testimony should be deemed a judicial admission only as to those facts that are 'peculiarly within his own knowledge and as to which he could not be [mistaken . . . .'] *Pedersen* v. *Vahidy*, 209 Conn. 510, 520, 552

A.2d 419 (1989)." C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.16.3 (b), p. 589. "A conclusive judicial admission, to be binding, must be one of fact and not a conclusion or an expression of opinion. Courts require the statement relied upon as a binding admission to be clear, deliberate and unequivocal." 4 Jones on Evidence (7th Ed. 2000) § 27:33, p. 526 n.45. That view was put succinctly by the Illinois Appellate Court in *Elliot* v. *Industrial Commission*, 303 Ill. App. 3d 185, 187, 707 N.E.2d 228 (1999): "Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge."

A fair reading of the plaintiff's complaint suggests that she could well have been mistaken in her assertion in count two that her injury on February 9, 1994, occurred in the course of her employment because she alleged in the first count that her injuries on that date occurred after her employment had been terminated. Thus, the very inconsistency of those claims evinces the plaintiff's lack of knowledge of the true facts of her employment status when she sustained injuries on February 9, 1994. Under those circumstances, we do not believe that her statement in count two that she had been injured in the course of her employment was a clear, unequivocal statement of fact within her knowledge. Accordingly, we believe that the court incorrectly deemed the plaintiff's allegation in count two to be a judicial admission. Rather, we believe that the pleading was more in the form of a conclusory allegation by the plaintiff and, as such, should be viewed more as an evidentiary admission that she claimed that she had been injured in the course of her employment. As an evidentiary admission, the plaintiff's allegation should be available to counsel for cross-examination as an inconsistency, but it should not be conclusive on the fact finder, as is the case with judicial admissions.

Having determined that the plaintiff's allegation in count two is not a judicial admission, we need not reach the plaintiff's remaining arguments in that regard.

## II

The plaintiff's next claim relates to the counts of the complaint that were submitted to the jury. Here, the plaintiff claims that the court improperly precluded and limited the testimony of a witness who was similarly discriminated against for exercising her rights under the Workers' Compensation Act. We disagree.

"Our standard of review for evidentiary rulings is as follows. The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Mazzeo*, 74 Conn. App. 430, 434, 811 A.2d 775, cert. denied, 263 Conn. 910, 821 A.2d 767 (2003).

"[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . Any testimony in a case that tends of itself or in connection with other testimony to influence the result on a fact in issue is material. If the testimony would tend to affect the verdict of the [trier of fact], it meets the test of materiality."

(Internal quotation marks omitted.) *Dubreuil* v. *Witt*, 65 Conn. App. 35, 45, 781 A.2d 503 (2001).

The plaintiff intended to call Arlene Pocevik to testify that Pocevik's employment had been terminated by the defendant in retaliation for having filed a workers' compensation claim and that she thereafter was reinstated. On April 3, 2001, the defendant filed a motion in limine to preclude the testimony of that witness, claiming that the testimony would be improper for the purpose of showing a pattern or practice of retaliation by the defendant. The court agreed and precluded that witness' testimony because the plaintiff had not pleaded that the defendant had engaged in a pattern of discrimination.[5]

On April 10, 2001, at trial, the plaintiff once again attempted to offer Pocevik to testify as to the defendant's alleged disparate treatment of workers who exercised their rights under the Workers' Compensation Act. The court again sustained the defendant's objection and precluded her testimony.

[5] The following colloquy took place between the court and the plaintiff's counsel:

"The Court: Well, number one, counselor, I think that [the defendant's counsel] is correct in that he's saying that you are attempting to change the theory upon which you intend to prove your case at the eleventh hour. I've said it all along here that we are talking about treatment as opposed to retaliation, and you are telling me that's exactly what these two witnesses are going to talk about, how their situation is different, how there's a pattern of discrimination here or a pattern of retaliation, and so therefore the defendant must read up. You don't say that in your pleadings. Now, you want to amend your pleadings to say that?

"[Plaintiff's Counsel]: Of pattern and practice, Your Honor?

"The Court: Yes. Do you want to amend your pleadings now to say that?

"[Plaintiff's Counsel]: I don't think it's necessary.

"The Court: Okay. All right. Now, you have just said to me that you have pled everything you need to plead in order to get this evidence in. I respectfully disagree with you. . . . I've given you an opportunity to amend, you've declined to take that opportunity because you say your pleadings are sufficient as is. I respectfully disagree. And I'll therefore hold that if these witnesses, if they are offered for the purpose of showing pattern and practice of discrimination or a pattern of retaliation, cannot do that. And pattern of other kinds of discrimination, they cannot do that."

The plaintiff claims, on appeal, that guidance from federal law should lead us to the conclusion that the court acted improperly in precluding Pocevik's testimony. In response, the defendant argues that because the plaintiff did not plead a pattern of retaliatory discrimination in her complaint, she was precluded from offering evidence on such matter. We agree with the defendant.

"A fundamental tenet in our law is that the plaintiff's complaint defines the dimensions of the issues to be litigated. [T]he right of a plaintiff to recover is limited to the allegations of [her] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise . . . . A plaintiff may not allege one cause of action and recover upon another. Facts found but not averred cannot be made the basis for a recovery. . . . A judgment in the absence of written pleadings defining the issues would not merely be erroneous, it would be void." (Citations omitted; internal quotation marks omitted.) *Pergament* v. *Green*, 32 Conn. App. 644, 650, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993).

After reviewing the record, we conclude that the court acted within its discretion in precluding the plaintiff's proffered evidence. The plaintiff offered her witness to testify as to the witness' experience with retaliation by the defendant for filing a workers' compensation claim. The purpose of that testimony was to show a pattern of discrimination by the defendant resulting in the termination of the plaintiff. The plaintiff, however, never made pattern allegations in her complaint. Consequently, she properly was precluded from offering evidence to support a claim of a pattern of retaliation. We note, also, that the court offered to allow the plaintiff to amend her pleading to conform to the proffered evidence, but her counsel declined. Under

those circumstances, the court did not abuse its discretion in excluding the proffered evidence.

### III

The plaintiff's final claim is that the court improperly precluded her from introducing into evidence General Statutes § 31-313, Connecticut's light duty work statute, to demonstrate that the defendant had an obligation to provide light duty work to her if available. We disagree.

At the outset, we note that we review that evidentiary claim to determine whether the court's ruling was an abuse of discretion. See *State* v. *Mazzeo*, supra, 74 Conn. App. 434. During trial, the plaintiff attempted to present § 31-313[6] to establish that the defendant had a duty to provide her with light duty work. The plaintiff argued that the statute related to her claim that one of the ways in which the defendant retaliated against her for filing her workers' compensation claim was to not provide light duty work.

The court sustained the defendant's objection, ruling that by seeking to introduce the provisions of § 31-313, the plaintiff was attempting to advance a new theory of liability not set forth in the pleadings. Additionally, the evidence was excluded as not relevant to those claims fairly encompassed within the pleadings.[7]

---

[6] General Statutes § 31-313 (a) provides in relevant part: "(1) Where an employee has suffered a compensable injury which disables him from performing his customary or most recent work, his employer at the time of such injury shall transfer him to full-time work suitable to his physical condition where such work is available, during the time that the employee is subjected to medical treatment or rehabilitation or both and until such treatment is discontinued on the advice of the physician conducting the same or of the therapist in charge of the rehabilitation program or until the employee has reached the maximum level of rehabilitation for such worker in the judgment of the commissioner under all of the circumstances, whichever period is the longest. . . ."

[7] Specifically, the court stated: "This doesn't put anybody on notice that you're claiming that the reason for this—this retaliatory action was because she made a claim for regular duty. That is not the claim that was expressed in your complaint, nor in this trial brief, and I'm not going to allow it at this late stage. . . . I'm not allowing it because you did not plead that as

We agree with the court's observation that it is the plaintiff's responsibility to plead any and all theories of recovery in her complaint and that failure to do so will result in the exclusion of evidence relating to any newly advanced theories. See *Pergament* v. *Green*, supra, 32 Conn. App. 650. In the second count of her complaint, the plaintiff alleged that her employment had been terminated in violation of § 31-290a in retaliation for her having filed a claim for workers' compensation benefits. Nowhere in her complaint did she claim that the defendant had discriminated against her by failing to provide light duty work as required by § 31-313. On the basis of our review of the pleadings, we believe that the court acted within its discretion in excluding the plaintiff's proffered evidence.

The judgment is reversed only as to count one of the plaintiff's amended complaint and the case is remanded for further proceedings on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

a theory of recovery here. . . . It goes to that issue. It does. Okay? Unfortunately, you did not plead it."